IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br><br>    Plaintiff,<br>vs.<br><br>Joel Pulido-Trujillo,<br><br>    Defendant/Movant. | No. CR 05-0170-PHX-FJM<br>    CV 07-1645-PHX-FJM (BPV)<br><br>**REPORT AND RECOMMENDATION** |

On August 27, 2007, Joel Pulido-Trujillo, ("Movant"), presently confined in the Rivers Correctional Institution, Winton, North Carolina, filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion") (Doc. #150). The Magistrate Judge recommends that the District Court enter an order denying the Motion.

Ordinarily, a court must conduct a hearing on a motion unless it "and the files and records of the case conclusively show that the petitioner is entitled to no relief ...." 28 U.S.C. § 2255. The Motion, as well as the files and records, do conclusively establish that Miranda-Martinez is not entitled to relief. *See Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989). Hence, no hearing is required.

**I.    PROCEDURAL BACKGROUND.**

On December 22, 2005, Pulido-Trujillo pled guilty to Count 1 of the Indictment, Conspiracy to Possess with Intent to Distribute Five Kilograms or more of Cocaine. (Doc. No. 92.)

The plea agreement contained a waiver of Pulido-Trujillo's' appeal rights: The defendant ...waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals); and (3) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255, or any other collateral attack." (Doc. No. 157, Ex. A, Plea Agreement, at 4.)

On May 1, 2006, Pulido-Trujillo was sentenced to 120 months imprisonment, followed by five years of supervised release. (Doc. No. 115.)

On May 9, 2006, Pulido-Trujillo filed a Notice of Appeal. (Doc. No. 117.) The Ninth Circuit Court of Appeals granted the Government's motion to dismiss the appeal in light of the valid appeal waiver. (Doc. No. 147.)

Pulido-Trujillo next filed the present § 2255 action. (Doc. No. 150.) He raises four grounds for relief: First, he alleges that he received ineffective assistance in connection with plea agreement based on counsel's failure to adequately investigate the underlying facts and law and at sentencing by wrongly conceding Movant was ineligible for the safety valve. Second, he alleges that his guilty plea was not voluntary and intelligent. Third, he alleges that he was actually innocent of the crime to which he pleaded guilty. Lastly, he alleges that the government breached the terms of the plea agreement by opposing application of the safety valve to his sentence. (*Id*.)

On December 18, 2007 the District Court called for an answer from the United States Attorney. (Doc. No. 153.) The Government filed a Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence on April 16, 2008, with exhibits A through F attached. (Doc. No. 157.) Movant filed his reply on May 7, 2008.

**DISCUSSION**

   **A. Timeliness**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a one year period of limitations from the date on which the judgement of conviction becomes final has been imposed on the filing of motions for collateral relief by prisoners in federal custody. 28 U.S.C. § 2255. The Magistrate Judge finds the Motion timely filed.

   **B.   Waiver**

The Government asserts that the Court should deny the Motion because Movant expressly waived his right to collaterally attack his sentence. Additionally, the Government argues that Pulido-Trujillo's claims that his plea was not knowing and voluntary or that the United States breached the plea agreement are meritless and should be denied.

Movant has waived challenges to collaterally attack his conviction and sentence. The Ninth Circuit Court of Appeals has found that there are "strict standards for waiver of constitutional rights." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1102 (9th Cir. 2005). It is impermissible to presume waiver from a silent record, and the Court must indulge every reasonable presumption against waiver of fundamental constitutional rights. *Id.* In this action, Movant's waiver was clear, express, and unequivocal.

Plea agreements are contractual in nature, and their plain language will generally be enforced if the agreement is clear and unambiguous on its face. *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005). A defendant may waive the statutory right to bring a § 2255 action challenging the length of his sentence. *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). The only claims that cannot be waived are claims that the plea or waiver itself was involuntary or that ineffective assistance of counsel rendered the plea or waiver involuntary. *See Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) (holding that a plea agreement that waives the right to file a

federal habeas petition pursuant to § 2254 is unenforceable with respect to an ineffective assistance of counsel claim that challenges the voluntariness of the waiver); *Pruitt*, 32 F.3d at 433 (expressing doubt that a plea agreement could waive a claim that counsel erroneously induced a defendant to plead guilty or accept a particular plea bargain); *see also Jeronimo*, 398 F.3d at 1156 n.4 (declining to decide whether waiver of all § 2255 rights included ineffective assistance of counsel claims implicating the voluntariness of the waiver).

"Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside [the category of ineffective assistance of counsel claims challenging the validity of the plea or the waiver] are waivable." *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001). *See also Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005) (joining the Second, Fifth, Sixth, Seventh, and Tenth Circuits in holding that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing.")**.**

"'Generally, courts will enforce a defendant's waiver of his right to appeal if 1) the language of the waiver encompasses the defendant's right to appeal on the grounds claimed on appeal, and 2) the waiver is knowingly and voluntarily made.'" *United States v. Martinez*, 143 F.3d 1266, 1270-71 (9th Cir. 1998) (citations and quotation omitted). Although waiver of the right to appeal would not prevent an appeal where the sentence imposed is not in accordance with the negotiated agreement, a waiver is valid even if a defendant does not know the exact nature of what appellate issues might later arise at the time the defendant enters the waiver. *Navarro-Botello*, 912 F.2d at 321.

The Plea Agreement expressly waived Movant's right to collaterally attack the conviction or sentence. (Doc. No. 157, Ex. A, at 4.) The Plea Agreement further stated that Pulido-Trujillo agreed that his attorney had fully advised him of the nature of the

charges to which he was entering a plea, that the guilty plea was not the result of force, threats, assurances or promises, that his acceptance of the plea was voluntary, and that he agreed to be bound by its provisions. (*Id.*, at 8.)

At Pulido-Trujillo's' change of plea hearing, he was placed under oath and the Court informed him of the importance of understanding the proceedings, and that at any time if he didn't understand or had a question about anything in the case, he was to interrupt, and let the Magistrate Judge know. (Doc. No. 157, Ex. B., Change of Plea Hearing, R/T 12/22/05, at 2.) Pulido-Trujillo responded that this was "fine." (*Id.*) The Court asked Pulido-Trujillo if someone had read the plea agreement to him in Spanish, and if he had understood it. (*Id.* at 5.) Pulido responded affirmatively to both questions. (*Id.*) Pulido-Trujillo signed the plea agreement, with his true name, in court. (*Id.* at 4-5.)

The Court informed Pulido-Trujillo that if the District Court accepted the plea agreement, then his conviction and sentence would be final, not appealable or subject to attack. (*Id.* at 17.) The Court further informed Pulido-Trujillo of the constitutional rights he would forfeit by pleading guilty. (*Id.* at 17-19.) The Court specifically directed Pulido-Trujillo's attention to the waiver of appeal rights. (*Id.* at 19-20). Pulido-Trujillo acknowledged that he understood all of the rights he was giving up by pleading by pleading guilty. (*Id.* at 19-20) The plea colloquy indicates Pulido-Trujillo was aware of the waiver provision in the plea agreement. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

Counsel for Movant has executed an affidavit in this case, avowing to the following: 1) counsel discussed the case and nature of the charges, potential sentence, applicability of the Sentencing Guidelines, the possibility of mandatory minimum sentences, and issues related to the possession of a firearm in relation to narcotics activity; 2) with the help of a Spanish interpreter counsel ensured that each and every

provision of the plea agreement was read to Pulido-Trujillo; 3) counsel explained each provision of the plea agreement to Pulido-Trujillo and obtained acknowledgment that Pulido-Trujillo understood the plea agreement; 4) counsel did not instruct Pulido-Trujillo to answer the Court's questions untruthfully during the change of plea proceedings, nor did he fool or trick Pulido-Trujillo into pleading guilty; and 5) counsel discussed the factual basis for the plea with Pulido-Trujillo, and he indicated that he understood and agreed with the facts to which he would plead guilty. (Doc. No. 157, Ex. C,)

The court concludes Pulido-Trujillo was aware of the waiver provision in the plea agreement when he pleaded guilty. The Plea Agreement signed by the Movant demonstrates that Movant entered a knowing, intelligent and voluntary waiver of his right to appeal or collaterally attack any matter pertaining to the prosecution or sentence. The Magistrate Judge finds that the Movant knowingly, intelligently, and voluntarily waived his right to collaterally attack his conviction or sentence. The allegations in grounds one, three and four of Movant's § 2255 motion to vacate do not pertain to the voluntariness of the plea agreement or the waiver. Movant's plea agreement expressly waived his right to raise these issues by way of a direct appeal or collateral attack and his guilty plea pursuant to the agreement was accepted as knowingly, intelligently and voluntarily made. Consequently, the court finds that Movant waived the claims in grounds one, three and four of his § 2255 motion and recommends that they be denied.

Out of an abundance of caution, to the extent that ground one raises an issue that Pulido-Trujillo's plea was not knowing and voluntary because of counsel's ineffective representation, the merits of ground one will be addressed alternatively as a claim that Pulido-Trujillo's plea was not knowing and voluntary due to the ineffective assistance of counsel.

### C. Ineffective Assistance of Counsel

The two-prong test for establishing ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689-90. The *Strickland* test also applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A defendant who pleads guilty based on the advice of counsel may attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel fell below the level of competence demanded of attorneys in criminal cases. *Id.* at 56. To satisfy the second prong of the *Strickland* test, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

In ground one, Movant contends that his attorney was uninterested in advocating for his cause, as evidenced by his acquiescence in the Government's interpretation of the discussion of the safety valve language in the plea agreement. Movant claims that defense counsel took "no steps to ensure that the Government had a clear contractual obligation to recommend the safety valve in petitioner's case." (Doc. No. 150, at 7.) Movant further alleges that the "true facts to this case were never known to the court because petitioner had been coerced into pleading guilty by his attorney by stating if petitioner didn't plead guilty that he would receive a lot of time, never once did counsel

entertain the fact that petitioner was innocence [sp] of these charges and that petitioner was pleading to a charge he didn't know anything about." (*Id.*)

In ground two, Movant further alleges that he does not speak English, and is quite limited in his ability to read and write Spanish, and did not understand what he was pleading guilty to, but only followed the instructions of his retained counsel to make the necessary recitations to the court in order for the court to accept his guilty plea, "otherwise, as petitioner's trial counsel had stated, the court would not accept the guilty plea and petitioner would be found guilty and face a lot of time." (Doc. No. 150 at 20.) Pulido-Trujillo further asserts that counsel never attempted to discuss the case with him, nor did counsel make any attempts to explain the nature of the charges against him, and that he went into the proceedings "deaf-dumb and blind." (*Id.*) Pulido-Trujillo further argues that the government violated the terms of the plea agreement by actively opposing application of the "safety valve" despite Pulido-Trujillo's eligibility for application of the "safety valve."

Movant's claims are undermined by the change of plea hearing transcript. Movant was asked if his lawyer went through the plea agreement and explained it to him, and he responded "yes." (Doc. No. 157, Ex. B., Change of Plea Hearing, R/T 12/22/05, at 5.) The court asked Movant if his lawyer had answered all of his questions about the plea agreement, and he responded "yes." (*Id.* at 5-6.) The Court further asked Movant if he believed that he understood the plea agreement, and he responded, "yes." (*Id.* at 6.) The Court asked Movant if he had been satisfied with his representation so far; if Movant's counsel had "done the things in [his] case that [he's] asked him to do"; and if he had enough time to talk with his lawyer about whether he should plead guilty - Movant responded "yes" to each question (*Id.* at 7-8.) Movant acknowledged that he understood the charges. (*Id.* at 8.) The Court further explained to Movant that "If you have no convictions or a very insignificant conviction, if you did

not use violence or threats of violence or possess a firearm or dangerous weapon during this offense, if no one was injured during this offense, and if you were not an organizer or leader in this crime, then you have an opportunity to get less than ten years. Otherwise, the least you can get is ten years. Do you have any questions?" Movant replied: "No. Everything's fine." (*Id*. at 13-14.) The Court asked counsel if he had explained to his client that "unless he qualifies for the safety valve, he's going to get the ten years?" (*Id*. at 14.) Counsel responded "yes." (*Id*.)

Regarding the safety valve language placed into the plea agreement, which the Court considered "superfluous," the Court asked the Government if Movant qualified for safety valve, "then you're going to recommend the low sentence in the guideline range?" (*Id*.) The Goverment responded "That's correct." (*Id*.) The Court asked counsel if that was how he had explained it to his client, and counsel explained "yes" because, that was how he understood the language, as did the Government, because it was a recommendation, and not a stipulation. The Court responded "Okay. I guess I would have written it differently, but that's okay, as long as everybody understands." (*Id*. at 15.) The Court asked counsel if he understood; counsel responded "yes." (*Id*.) The Court asked counsel if his client understood, and counsel responded that "That's how I explained it to him." (*Id*.) The Court explained to Movant that if he qualified for safety valve, the government would recommend to the Court that he get the low number in the sentencing range. (*Id*. at 15-16.)

As to Movant's claim that his counsel stated if he did not make the necessary recitation, the Court would not accept the guilty plea, and he would be found guilty and face a lot of time; even if his lawyer said this, it does not show that Movant was intimidated into accepting the plea. When asked directly if anyone threatened him or in any way forced him to enter the plea agreement, Movant answered "no." (Doc. No. 157, Ex. B. at 20.) Additionally, Movant fails to even allege that he would not have

not use violence or threats of violence or possess a firearm or dangerous weapon during this offense, if no one was injured during this offense, and if you were not an organizer or leader in this crime, then you have an opportunity to get less than ten years. Otherwise, the least you can get is ten years. Do you have any questions?" Movant replied: "No. Everything's fine." (*Id*. at 13-14.) The Court asked counsel if he had explained to his client that "unless he qualifies for the safety valve, he's going to get the ten years?" (*Id*. at 14.) Counsel responded "yes." (*Id*.)

Regarding the safety valve language placed into the plea agreement, which the Court considered "superfluous," the Court asked the Government if Movant qualified for safety valve, "then you're going to recommend the low sentence in the guideline range?" (*Id*.) The Goverment responded "That's correct." (*Id*.) The Court asked counsel if that was how he had explained it to his client, and counsel explained "yes" because, that was how he understood the language, as did the Government, because it was a recommendation, and not a stipulation. The Court responded "Okay. I guess I would have written it differently, but that's okay, as long as everybody understands." (*Id*. at 15.) The Court asked counsel if he understood; counsel responded "yes." (*Id*.) The Court asked counsel if his client understood, and counsel responded that "That's how I explained it to him." (*Id*.) The Court explained to Movant that if he qualified for safety valve, the government would recommend to the Court that he get the low number in the sentencing range. (*Id*. at 15-16.)

As to Movant's claim that his counsel stated if he did not make the necessary recitation, the Court would not accept the guilty plea, and he would be found guilty and face a lot of time; even if his lawyer said this, it does not show that Movant was intimidated into accepting the plea. When asked directly if anyone threatened him or in any way forced him to enter the plea agreement, Movant answered "no." (Doc. No. 157, Ex. B. at 20.) Additionally, Movant fails to even allege that he would not have

entered the plea agreement if his lawyer had not advised him that way. For these reasons, Movant has failed to show that his lawyer provided ineffective assistance of counsel by "coercing, tricking, or inducing him to plead guilty," and has failed to establish prejudice.

At the time of sentencing, Pulido-Trujillo did not raise any claim of involuntariness of his plea, neither did he raise any factual objection to the presentence report's recommendation that he was ineligible for the "safety valve" provision based upon the presence of a firearm at the drug stash house for which he possessed house keys at the time of his arrest. (See Doc. No. 157, Ex. D., Sentencing Transcript, R/T 5/1/2006)

Thus, the evidence fails to support Movant's claim that counsel was ineffective by "acquiescing" in the Government's interpretation of the discussion of the safety valve language in the plea agreement. It is clear from the record that the agreement was that the Government would recommend the low end of the range if Movant were "safety valve" eligible. The transcript indicates that all parties, including Movant understood this.

The plea agreement also belies that fact that Movant claims he was pleading to a charge he did not know anything about. It is clear from the transcript that Pulido-Trujillo understood the charges, and intended to plead guilty. (Doc. No. 157, Ex. B. at 8.)

Movant's claim that his inability to speak English, or read and write Spanish, and that he only followed the instructions of his counsel is also not supported by the evidence. Both his lawyer and the court advised Movant of the potential consequences of his guilty plea. The Court adequately ascertained that Movant's plea was knowingly, voluntarily, and intelligently made. Movant has failed to demonstrate that his attorney provided ineffective assistance in this regard.

For the above reasons, the court finds that Movant's allegations of ineffective assistance of counsel are unsupported by the record. Accordingly, the court will recommend that Movant's allegations in grounds one and two of his motion to vacate be denied.

**RECOMMENDATION**

After careful consideration of the Motion to Vacate, Set Aside, or Correct Sentence and all papers filed in this action, the Magistrate Judge recommends that the District Court deny Movant's motion.

Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived.

If objections are filed, the parties should use the following case numbers: CR 05-170-PHX-FJM and CV 07-1645-PHX-FJM.

DATED this 21st day of September, 2009.

_____
Bernardo P. Velasco
United States Magistrate Judge